# WAGNER ET AL., PARTNERS, DOING BUSINESS UNDER THE NAME OF W. T. WAGNER'S SONS, *v.* CITY OF COVINGTON.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 61. Argued November 10, 11, 1919.—Decided December 8, 1919.

Where a manufacturer of goods habitually causes them to be carried on his vehicles from the State of manufacture to various establishments of retail dealers who are his customers in an adjoining State, and there sold and delivered to such dealers in the original packages in such quantities as they may desire to purchase at the times of such visits, the business, as thus transacted with them, is that of an itinerant vender or peddler, and may be taxed in the second State under a nondiscriminating license tax law without imposing a direct burden on interstate commerce. P. 102.

A state tax which in substance and effect is constitutional can not be made otherwise by the name it bears in the state laws and decisions. P. 101.

177 Kentucky, 385, affirmed.

THE case is stated in the opinion.

*Mr. Harry Brent Mackoy*, with whom *Mr. William H. Mackoy* was on the briefs, for plaintiffs in error:

The goods are shipped from Ohio and sold and delivered at wholesale in Kentucky in the original packages; are always in transit except during the short pause incidental to delivery; when shipped, they are appropriated in a practical, if not in a technical, sense to the fulfillment of contracts with certain specific existing customers, with whom a general understanding is previously had that plaintiffs in error will furnish them with such as they may need or desire to purchase of them.

The goods are not carried into Kentucky with the

intention of having them remain there permanently, or
for an indefinite period, or for sale to the general public;
but merely for a temporary purpose which is either to ap-
ply them to fulfilling the contracts, or to carry back into
Ohio the part not so applied. This is all done and intended
to be done on the same trip of the same vehicle, which
consumes at the most but a few hours. They are never
hawked about, peddled, offered or sold to the public
generally.

This course of dealing constitutes a continuous current
of commerce between plaintiffs in error, as residents of
Ohio, and their standing customers in Kentucky. The
original packages do not become part of the general mass
of property in Kentucky until after the sale and delivery
to the customers, and hence are not subject to state
regulation or control in the hands of plaintiffs in error.
This power does not extend to the taxation of such pack-
ages while temporarily within the State, which are in
course of transportation or which are being held therein
only long enough to find out the exact needs of the custom-
ers. The person who imports goods in original packages
from one State into another has the right to sell them in
such packages in the latter State as a necessary incident
to the right to import, without being subject to state regu-
lation or control, and this right continues until the orig-
inal packages are commingled with the general mass of
property in the State either by actual sale, or by breaking
up the packages, or by some other act which indicates
that they are to be so commingled. *Leisy* v. *Hardin*, 135
U. S. 100; *Lyng* v. *Michigan*, 135 U. S. 161; *Schollen-
berger* v. *Pennsylvania*, 171 U. S. 1; *Austin* v. *Tennessee*,
179 U. S. 343; *Cook* v. *Marshall County*, 196 U. S. 261;
*Purity Extract Co.* v. *Lynch*, 226 U. S. 192; *Adams Express
Co.* v. *Kentucky*, 238 U. S. 190; *Price* v. *Illinois*, 238 U. S.
446; *Rosenberger* v. *Pacific Express Co.*, 241 U. S. 48.

An examination of the decisions of courts of last resort

in the various States shows that all of them are in accord with this rule, and, so far as we have been able to find, Kentucky stands alone in holding to the contrary.

Where goods are sent for sale from a place in one State, with the expectation that they will end their transit, after purchase in the same form in another State, and when in effect they do so, with only the interruption necessary to consummate the purchase at the point of destination, and when this is a typical, constantly recurring course of business, the current thus existing is a current of commerce among the States and the purchase of the goods is a part and incident of such commerce. *Swift & Co.* v. *United States*, 196 U. S. 375.

The current does not cease to flow until the articles are delivered to the persons for whom they are intended, or to whom they are destined to be sold, even though the consignor ships them at the starting point by a common carrier consigned to himself at the point of destination, and himself makes delivery to such persons instead of by the common carrier, and even though the title does not pass until then. *Caldwell* v. *North Carolina*, 187 U. S. 622; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Crenshaw* v. *Arkansas*, 227 U. S. 389; *Stewart* v. *Michigan*, 232 U. S. 665; *Western Oil Refining Co.* v. *Lipscomb*, 244 U. S. 346; *York Mfg. Co.* v. *Colley*, 247 U. S. 21.

In each of the last-mentioned cases the article was started to move in pursuance of a previously existing definite contract of sale—but this is not essential. It is sufficient that the intention be conditional, depending upon the ability to negotiate a sale upon exhibition or after pause for negotiation; or it suffices if the article is started because of an expectation to sell. *Swift & Co.* v. *United States, supra; Dozier* v. *Alabama*, 218 U. S. 124; *Coe* v. *Errol*, 116 U. S. 517; *Kelley* v. *Rhoads*, 188 U. S. 1; *Davis* v. *Virginia*, 236 U. S. 697; *General Oil Co.* v. *Crain*, 209 U. S. 211. See also *Weigle* v. *Curtice Bros. Co.*, 248

U. S. 285; *Rast v. Van Deman & Lewis Co.*, 240 U. S. 342, 362; *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, 295–298; *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321, 326–327.

Original packages of interstate commerce themselves only become taxable when they have come to rest at their destination or have become part of the general mass of property in the State.

There is a distinction between the right to impose a tax on the non-resident importer for the privilege of selling goods in the original packages and the right to impose a tax on the original packages themselves after they reach their destination and come to rest in the State.

There is also a distinction between the right to impose a tax on an importer who is using persons licensed by the State to make sales for him within the State and the right to impose a tax on the importer himself for making such sales, as is sought to be done here.

The so-called "peddler" cases, *Machine Co.* v. *Gage*, 100 U. S. 676, and *Emert* v. *Missouri*, 156 U. S. 296, do not apply, because the license here involved is one for dealing at wholesale in soft drinks, and under the decisions of the Court of Appeals of Kentucky and the statutes of that State, the plaintiffs in error are not engaged in a peddling business. *City of Newport* v. *French Brothers Bauer Co.*, 169 Kentucky, 174, 183 S. W. Rep. 532, 536, 537. Moreover, the business there carried on was purely intrastate, as an examination of the two cases will show. See *Watters* v. *Michigan*, 248 U. S. 65; *Crenshaw* v. *Arkansas, supra.*

*Mr. E. A. Stricklett* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was an action brought by plaintiffs in error in a state court of Kentucky against the City of Covington, a

municipal corporation of that State, to recover license fees theretofore paid by them under certain ordinances of the city for the conduct of their business in Covington, and to enjoin the enforcement against them of a later ordinance calling for further like payments. The several ordinances, each in its turn, required all persons carrying on certain specified businesses in the city to take out licenses and pay license fees; among others, the business of wholesale dealer in what are known as "soft drinks." Plaintiffs were and are manufacturers of such drinks, having their factory and bottling works in the City of Cincinnati, in the State of Ohio, on the opposite side of the Ohio River from Covington. They have carried on and do carry on the business of selling in Covington soft drinks, the product of their manufacture, in the following manner: They have a list of retail dealers in Covington to whom they have been and are in the habit of making sales; two or three times a week a wagon or other vehicle owned by plaintiffs is loaded at the factory in Cincinnati and sent across the river to Covington, and calls upon the retail dealers mentioned, many of whom have been for years on plaintiffs' list and have purchased their goods under a general understanding that plaintiffs' vehicle would call occasionally and furnish them with such soft drinks as they might need or desire to purchase from plaintiffs; when a customer's place of business is reached by the vehicle the driver goes into the storeroom and either asks or looks to see what amount of drinks is needed or wanted; he then goes out to the vehicle and brings from it the necessary quantity, which he carries into the store and delivers to the customer; upon his trips to Covington he always carries sufficient drinks to meet the probable demands of the customers, based on past experience; but, with the exception of occasional small amounts carried for delivery in response to particular orders previously received at plaintiffs' place of business in Cincinnati, all

sales in Covington are made from the vehicle by the driver in the manner mentioned. Sometimes the driver succeeds in selling there the entire supply thus carried upon the wagon, sometimes only a part thereof; or he may return after having made but a few sales, or none at all, in which event he carries the unsold supply back to plaintiffs' place of business in Cincinnati. The soft drinks in question are delivered in stopped bottles or siphons, according to their nature, and these are placed (at the bottling works) in separate wooden or metal cases, each case being open at the top and holding a certain number of bottles or siphons according to the nature of the drinks and the custom of the trade; the filled bottles or siphons are carried upon the vehicle, sold, and delivered in these cases, each case remaining entire and unbroken, and nothing less than a case being sold or delivered. The retail dealers usually pay cash, and purchase only the contents of the bottles, while the bottles and cases remain the property of plaintiffs and are subsequently collected, when empty, by plaintiffs' drivers or agents on their regular visits; there are, however, a few customers who pay for and thereafter own the bottles in which distilled water is delivered. The ordinances were and are respectively applicable to all wholesale dealers in such soft drinks in Covington, whether the goods were or are manufactured within or without the State.

The trial court and, on appeal, the Court of Appeals of Kentucky gave judgment for defendant, overruling the contention of plaintiffs that the ordinances as carried into effect against them were repugnant to the "commerce clause" (Art. I, § 8) of the Constitution of the United States, 177 Kentucky, 385; and upon this federal question the case is brought here by writ of error.

, It is important to observe the precise point that we have to determine. It is indisputable that with respect to the goods occasionally carried upon plaintiffs' wagon from one

State to the other in response to orders previously received at their place of business in Cincinnati, plaintiffs are engaged in interstate commerce, not subject to the licensing power of the Kentucky municipality. The Court of Appeals in the present case, in line with its previous decisions in *City of Newport* v. *Wagner*, 168 Kentucky, 641, 646, and *City of Newport* v. *French Brothers Bauer Co.*, 169 Kentucky, 174, recognizing the authority of the decisions of this court bearing upon the subject, conceded that this part of plaintiffs' business was not subject to state regulation (177 Kentucky, 388). At the same time the court held that with respect to the remaining and principal part of the business conducted in Covington, that which consists in carrying a supply of goods from place to place upon wagons, exposing them for sale, soliciting and negotiating sales, and immediately delivering the goods sold, plaintiffs were subject to the licensing ordinances; and it is with this alone that we have to deal. If, with respect to this portion of their business, plaintiffs may be subjected to the regulatory power of the State acting through the municipality, we are not concerned with the question whether the general language of the ordinances, if applied with respect to some other method of dealing with goods brought from State to State, might be repugnant to the Federal Constitution.

From the facts recited it is evident that, in essence, that part of plaintiffs' business which is subjected to regulation is the business of itinerant vender or peddler; a traveling from place to place within the State selling goods that are carried about with the seller for the purpose. Plaintiffs in error insist that this view of the matter is untenable because the courts of Kentucky have held that sales made to a retail merchant for resale do not constitute peddling within the meaning of the statutes of that State. *Standard Oil Co.* v. *Commonwealth*, 107 Kentucky, 606, 609; *City of Newport* v. *French Brothers Bauer Co.*, 169

Kentucky, 174, 185. These decisions, however, deal merely with a question of statutory definition; and it hardly is necessary to repeat that when this court is called upon to test a state tax by the provisions of the Constitution of the United States, our decision must depend not upon the form of the taxing scheme, or any characterization of it adopted by the courts of the State, but rather upon the practical operation and effect of the tax as applied and enforced. The state court could not render valid, by misdescribing it, a tax law which in substance and effect was repugnant to the Federal Constitution; neither can it render unconstitutional a tax, that in its actual effect violates no constitutional provision, by inaccurately defining it. *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350, 362.

We have, then, a state tax upon the business of an itinerant vender of goods as carried on within the State, a tax applicable alike to all such dealers, irrespective of where their goods are manufactured, and without discrimination against goods manufactured in other States. It is settled by repeated decisions of this court that a license regulation or tax of this nature, imposed by a State with respect to the making of such sales of goods within its borders, is not to be deemed a regulation of or direct burden upon interstate commerce, although enforced impartially with respect to goods manufactured without as well as within the State, and does not conflict with the "commerce clause." *Woodruff* v. *Parham*, 8 Wall. 123, 140; *Machine Co.* v. *Gage*, 100 U. S. 676; *Emert* v. *Missouri*, 156 U. S. 296; *Baccus* v. *Louisiana*, 232 U. S. 334.

The peddler's license tax considered in *Welton* v. *Missouri*, 91 U. S. 275, was denounced only because it amounted to a discrimination against the products of other States, and therefore to an interference with commerce among the States. To the same effect, *Walling* v. *Michigan*, 116 U. S. 446, 454.

95.                    Opinion of the Court.

Of course the transportation of plaintiffs' goods across the state line is of itself interstate commerce; but it is not this that is taxed by the City of Covington, nor is such commerce a part of the business that is taxed, or anything more than a preparation for it. So far as the itinerant vending is concerned, the goods might just as well have been manufactured within the State of Kentucky; to the extent that plaintiffs dispose of their goods in that kind of sales, they make them the subject of local commerce; and this being so, they can claim no immunity from local regulation, whether the goods remain in original packages or not.

The distinction between state regulation of peddlers and the attempt to impose like regulations upon drummers who solicit sales of goods that are to be thereafter transported in interstate commerce, has always been recognized. In *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, Mr. Justice Bradley, who spoke for the court, said (p. 497): "When goods are sent from one State to another for sale, or, in consequence of a sale, they become part of its general property, and amenable to its laws; provided that no discrimination be made against them *as* goods from another State, and that they be not taxed by reason of being brought from another State, but only taxed in the usual way as other goods are. *Brown* v. *Houston*, 114 U. S. 622; *Machine Co.* v. *Gage*, 100 U. S. 676. But to tax the sale of such goods, or the offer to sell them, before they are brought into the State, is a very different thing, and seems to us clearly a tax on interstate commerce." See, also, *Crenshaw* v. *Arkansas*, 227 U. S. 389, 399–400, where the distinction was clearly set forth. And in all the "drummer cases" the fact has appeared that there was no selling from a stock of goods carried for the purpose, but only a solicitation of sales, with or without the exhibition of samples; the goods sold to be thereafter transported from without the State. *Rogers* v. *Arkansas*, 227 U. S. 401, 408;

*Brennan* v. *Titusville*, 153 U. S. 289; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Rearick* v. *Pennsylvania*, 203 U. S. 507, 510; *Dozier* v. *Alabama*, 218 U. S. 124; *Browning* v. *Waycross*, 233 U. S. 16; *Western Oil Refining Co.* v. *Lipscomb*, 244 U. S. 346; *Cheney Bros. Co.* v. *Massachusetts*, 246 U. S. 147, 153.

*Judgment affirmed.*

No. 62. *Gilligan* v. *City of Covington.* By stipulation of counsel this case was heard with No. 61, and it is agreed that a similar judgment is to be entered.

*Judgment affirmed.*

MR. JUSTICE MCKENNA and MR. JUSTICE HOLMES dissent.