## CANFIELD OIL CO. v. FEDERAL TRADE COMMISSION.
### and five other cases.

(Circuit Court of Appeals, Sixth Circuit.   July 1, 1921.)

Nos. 3476, 3477, 3479, 3483, 3489, 3526.

1. Monopolies ☞17(2)—Leasing of gasoline tanks exclusively for purpose of storing gasoline purchased from lessor not objectionable.

The practice of leasing at a nominal rental tanks and automatic measuring pumps for storing and distributing of gasoline, on condition that they be used exclusively for the purpose of storing and marketing gasoline purchased from the lessor, does not violate Federal Trade Commission Act, § 5 (Comp. St. § 8836e), nor Clayton Act, § 3 (Comp. St. § 8835c), such system being competitive, advantageous to the public, and economical, and will not be prohibited, because tending to monopoly.

2. Commerce ☞33—Evidence and stipulations held insufficient to show use of gasoline tanks in interstate commerce.

An order of the Federal Trade Commission to desist from the practice of leasing gasoline tanks and measuring pumps to be used exclusively for gasoline purchased from the lessor, based on the theory that the parties were engaged in interstate commerce, held contrary to evidence and stipulations, showing that the equipment was shipped into Ohio, in the name of the lessor, and that interstate transportation had been fully accomplished and ended before the equipment was used.

---

**3. Commerce ⬤➙33—Order to desist from leasing of gasoline tanks held not warranted, on theory of interference with interstate commerce.**

An order of the Federal Trade Commission to desist from the practice of leasing gasoline tanks to be used exclusively for gasoline purchased from the lessor, engaged in intrastate commerce only, *held* not justified, on the ground that competitors were engaged in interstate commerce, and that the interstate and intrastate transactions were closely related, and that hence such practice cast a burden upon interstate commerce.

Petitions to Review Orders of the Federal Trade Commission.

Petitions to review orders of the Federal Trade Commission, by the Canfield Oil Company, by Thomas K. Brushart, by the White Star Oil Company, by the Paragon Refining Company, by the Columbus Oil Company and by the Standard Oil Company, an Ohio corporation. Orders reversed.

C. D. Chamberlin and Hubert B. Fuller, both of Cleveland, Ohio (Chamberlin & Fuller, of Cleveland, Ohio, on the brief), for petitioners Canfield Oil Co., Brushart, and White Star Oil Co.

Ira C. Taber, of Toledo, Ohio, for petitioner Paragon Refining Oil Co.

Franklin Rubrecht, of Columbus, Ohio, for petitioner Columbus Oil Co.

W. T. Holliday, of Cleveland, Ohio (Niman, Grossman, Buss & Holliday, of Cleveland, Ohio, on the brief), for petitioner Standard Oil Co.

Eugene W. Burr, of Washington, D. C. (Adrian F. Busick, of Washington, D. C., on the brief), for respondent.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The above-entitled cases involve the same questions and were heard and submitted together. They are part of a group of cases recently before the Federal Trade Commission, which commission declared in its findings that the practice of leasing, at a nominal rental, tanks and automatic measuring pumps, for the storing and distributing of gasoline, upon condition that the tanks and pumps so leased be used by the lessee, the retailer, exclusively for the purpose of storing and marketing gasoline purchased from the lessor, is a violation of section 5 of the Act of Congress approved September 26, 1914, known as the Federal Trade Commission Act (Comp. St. §§ 8836e), and section 3 of the Act of Congress approved October 15, 1914, known as the Clayton Act (Comp. St. § 8835c).

[1] Pursuant to this finding the Federal Trade Commission entered an order directing the petitioners to cease and desist from this practice. In view of the very able opinion recently announced by the Circuit Court of Appeals of the Second Circuit, in Standard Oil Co., of New York v. Federal Trade Commission, 273 Fed. 478, two of the same group of cases, and involving an identical state of facts, it is wholly unnecessary for this court to enter into any extended discussion of the question whether this practice of leasing tanks and pumps at a nominal rental and upon the conditions above stated, constitute "unfair method of competition in commerce." We are in full accord with the conclusion reached by that court in the above-named cases that:

⬤➙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

"A thing exists from its beginning, and it is not a conclusion of law from any facts here found that a system, which at present is keenly competitive, extremely advantageous to the public, and, in the opinion of a majority of the competent witnesses, economical, is at present unfair to any one or unfair because tending to monopoly."

It necessarily follows that for this reason the acts complained of do not violate either the Trade Commission Act or section 3 of the Clayton Act.

There is, however, in each of these cases the further question whether the business in which these petitioners are engaged is, or is not, interstate commerce. The finding by the commission that this practice constitutes unfair method of competition in commerce necessarily means commerce as defined by section 4 of the Federal Trade Commission Act (Comp. St. § 8836d) in this language:

"Commerce as used herein means trade or commerce among the several states and the foreign nations," etc.

It appears that the Federal Trade Commission made one general form of findings of fact to be filed in each of the cases of this group of cases then pending before that commission. These findings may all be sustained by some evidence as to some of the cases in this group, but, in so far as these particular cases are concerned, some of these findings are not only not supported by any evidence whatever, but are also in direct conflict with the only evidence on that particular issue, and they are also directly contrary to the stipulations and agreement of counsel in these cases in reference thereto.

The second finding of fact is as follows:

"That the respondent, in the conduct of its business as aforesaid, buys said 'equipments' in various states of the United States and sells and leases, and delivers the same to various persons, firms, corporations, and copartnerships in various states other than those in which the said equipments are purchased by the respondent, and from which they are delivered to the said users."

The stipulation in each of these cases, except Brushart, No. 3477, is as follows:

"That the respondent company does no business of the sort described in the complaint herein in any other state of the United States or the District of Columbia other than in the state of Ohio."

It also appears from the Brushart Case that a similar stipulation was filed, but it is not copied into the record in that case. However, the uncontradicted evidence shows that Brushart does business in only about five counties, in the Southern part of Ohio. It does appear from the evidence and the stipulations of the parties that the larger part of this equipment, tanks and pumps, are purchased in other states and shipped into Ohio, generally to the warehouse of the different companies in different cities of the state, where they are uncrated and stored until a customer is found who desires to enter into these leases. Then the equipment is shipped directly to him from the warehouses. In one or two instances, perhaps, shipments have been made directly from the manufacturer to the city or locality where they are to be installed, but such shipment is in the name of the lessor company. In all cases, how-

ever, the transportation of these pumps and tanks in interstate commerce has been fully accomplished and ended before they are applied to the purposes of the petitioners' business. Covington Stockyards v. Keith, 139 U. S. 128–136, 11 Sup. Ct. 461, 35 L. Ed. 73; Railroad Co. v. Texas, 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540.

The Federal Trade Commission, however, did not predicate its order to cease and desist upon any question of interstate commerce, in so far as the furnishing of pumps and tanks are concerned. If it had done so, it would necessarily have limited that order to cease and desist from furnishing tanks and pumps transported in interstate commerce from other states into the state in which this business is conducted. On the contrary, the order specifically commands the respondents to cease and desist from directly or indirectly leasing any pumps and tanks whatever, regardless of where manufactured or where the same may be purchased by them.

[2] It would therefore appear that this order of the Federal Trade Commission to cease and desist is based upon the theory that the petitioners in the marketing of gasoline and other oil products are engaged in interstate commerce. In view of the uncontradicted evidence and the stipulations and agreements of the parties hereinbefore referred to, this theory is not tenable. On the contrary, this evidence and the agreements of the parties in reference to the facts affirmatively show that the sales business of the petitioners is purely and wholly intrastate. Bowman, Atty. Gen., v. Continental Oil Co., 255 U. S. ——, 41 Sup. Ct. 606, 65 L. Ed. ——, decided by the United States Supreme Court June 6, 1921.

[3] It is insisted, howeyer, by counsel for the commission that there are a number of corporations, competitors of the petitioners, doing business within the state of Ohio, who are engaged in interstate commerce, and that therefore the Federal Trade Commission has jurisdiction to make these findings and order under the doctrine announced by the United States Supreme Court in the Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18, and Railroad Co. v. U. S., 234 U. S. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341, which latter case is commonly known as the Shreveport Rate Case.

To this proposition there are two answers: (1) The findings and orders of the commission purport to regulate the business of the petitioners as interstate commerce, and not because the methods employed by petitioners in the conduct of intrastate business are discriminatory against, or a burden upon interstate commerce. (2) The evidence in these cases and the findings of fact made by the commission do not bring them within the purview of the cases above cited. The judgment in the Minnesota Rate Cases was based upon the proposition that:

"When the situation becomes such that adequate regulation of interstate rates cannot be maintained without imposing requirements with respect to such intrastate rates of interstate carriers as substantially affect interstate rates, it is for Congress to determine, within the limits of its constitutional authority over interstate commerce and its instruments, the measure of the regulation it should supply."

In the Shreveport Rate Case the Supreme Court held that:

"Wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the state, that is entiled to prescribe the final and dominant rule; otherwise the nation would not be supreme within the national field."

The findings made by the commission in these cases do not show such an extraordinary condition of affairs, or any such direct burden, hindrance, or discrimination against interstate traffic, as would call for the exercise of federal control over purely intrastate business. Nor is there any evidence in this record that would authorize such a finding. Especially is this true in view of the conclusion we have reached in this case that the practice complained of is at present, not only conducive to competition, but extremely advantageous to the public. Federal Trade Commission v. Gratz et al., 258 Fed. 314, 169 C. C. A. 330, 11 A. L. R. 793; Federal Trade Commission v. Gratz, 253 U. S. 421, 40 Sup. Ct. 572, 64 L. Ed. 993.

For the reasons above stated the orders complained of, entered by the Federal Trade Commission in each of these cases, are reversed.