**HOLLAND FURNACE COMPANY,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 12451.

United States Court of Appeals
Seventh Circuit.

June 16, 1959.

Rehearing Denied Aug. 14, 1959.

**204**

Stuart S. Ball, Chicago, Ill., Robert H. Trenkamp, Cleveland, Ohio, Richard J. Flynn, Chicago, Ill., Edward A. McLeod, Cleveland, Ohio, for petitioner. Sidley, Austin, Burgess & Smith, Trenkamp & Coakley, Cleveland, Ohio, of counsel.

James E. Corkey, Asst. Gen. Counsel, E. K. Elkins, Atty., Federal Trade Commission, Washington, D. C., Earl W. Kintner, Gen. Counsel, Miles J. Brown, Washington, D. C., Atty., Federal Trade Commission, for respondent.

Before SCHNACKENBERG and HASTINGS, Circuit Judges, and WHAM, District Judge.

WHAM, District Judge.

Petitioner, Holland Furnace Company, a corporation, filed its petition in this court for review of a final order of the Federal Trade Commission, dated July 7, 1958, which directs Holland to cease and desist from certain practices found to be deceptive and to constitute unfair competition. Thereafter, Holland filed a motion under the provisions of Rule 15(f) of this court, 28 U.S.C.A., moving for a determination of jurisdictional issues in advance of a hearing on the merits. This motion was granted. In the motion Holland says that the Commission had no jurisdiction to enter said final order for two reasons, namely, (1) that the findings of fact upon which said final order is based, together with the stipulated facts and documents of record, affirmatively demonstrate that the practices enumerated in the Commission's order were not employed in commerce and (2) that said findings of fact are wholly inadequate to sustain the jurisdiction of the Commission in that they fail to demonstrate that the practices enumerated in the Commission's order were employed in commerce.

The Commission rests its claim to jurisdiction upon the whole case. For a proper understanding and discussion of this claim it seems essential that the substance of the pleadings, findings and conclusions in so far as they bear on jurisdiction should appear. To conserve space they appear in marginal notes.

The substance of the Commission's complaint appears in the margin.[1]

1. That Holland, a Delaware corporation with principal place of business in Holland, Michigan, is and has been engaged in the manufacture, sale and distribution

Holland's answer.[2]

After extensive hearings before the Commission's examiner on the issues framed by the complaint and answer the examiner determined the issues in favor of the Commission and made his initial decision with his findings, conclusions and his order directing Holland, its officers, agents, representatives and employees, to cease and desist from the wrongful and deceptive practices therein found in connection with its offering for sale, sale or distribution in commerce of furnaces, heating equipment and parts therefor.

In the initial decision the examiner preliminary to his findings made this statement: "This matter being now before the Hearing Examiner for final determination based upon the record as an entirety, he having presided at all hearings, observed all witnesses, considered and ruled upon all testimony and exhibits of record, finds that this proceeding is in the interest of the public and hereinafter makes his findings as to the facts, conclusions drawn therefrom, and order."

The examiner's findings pertinent to the jurisdiction of the Commission appear in the margin.[3]

of furnaces, heating equipment and parts therefor; that it owns and operates approximately 475 branch offices, located in different states of the United States, and a number of subbranches; that its products are shipped from its said plant in Michigan to the various branch offices in other states for delivery to purchasers thereof, some shipments being made before sale and some after sale; that Holland maintains and has at all pertinent times maintained a course of trade in said products in commerce among and between the various states of the United States in substantial competition with others engaged in the manufacture, interstate sale and distribution of furnaces, heating equipment and parts therefor.

Further, that Holland, to sell its product, employs salesmen and house-to-house canvassers who have received instructions, sales manuals, and other material from Holland and are assigned a territory and required to make a report of each sale; that installation of equipment sold is made by Holland's servicemen.

Further, that in the course and conduct of its aforesaid business and for the purpose of selling its products Holland directly and through its representatives employs many false, unfair and deceptive practices among which are misrepresentation by the salesmen and servicemen that they are inspectors or representatives of government agencies or of gas and utility companies, or heating engineers, together with many other detailed wrongful practices all to the prejudice and injury of the public and Holland's competitors and constituting unfair and deceptive acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq.

2. The answer denies all allegations of unfair competition and says that it has not maintained a course of trade in its products in commerce among and between the various states of the United States; that the Commission has no jurisdiction to hear or determine the matters set forth in the complaint and no jurisdiction to issue the cease and desist order therein sought for the reason that the acts and practices allegedly constituting unfair methods of competition or unfair or deceptive acts or practices in commerce as set forth therein, were not committed in commerce within the intent and meaning of the Federal Trade Commission Act. Respondent says that such acts or practices in so far as admitted and not denied, were committed in transactions which were purely local in character and were not transactions in commerce within the intent and meaning of the Federal Trade Commission Act.

3. "1. Respondent, Holland Furnace Company, is a corporation organized under the laws of the State of Delaware with its principal place of business located at No. 489 Columbia Avenue, Holland, Michigan.

"2. Respondent is now, and has been for the past several years, engaged in the manufacture, sale and distribution of furnaces, heating equipment and parts therefor. Respondent owns and operates approximately 475 branch offices, as well also a number of subbranches, located in various states of the United States. All sales of furnaces, heating equipment and parts therefor, effected by the Holland Furnace Company or its representatives are to the ultimate purchasers and users of such equipment.

"3. In conducting its business respondent does not ship furnaces as units

The examiner in his initial decision listed as issue number one: "Is the respondent engaged in interstate commerce within the purview of the Federal Trade

but, typically, sends a carload of the essential parts which are assembled either in its warehouses or branches, or 'on the job' where the furnaces are to be installed. The warehouses mentioned are, in some instances, branch warehouses, that is to say, ones which are connected with the respondent's branches, or central warehouses located at strategic points and which supply the branches in adjoining or surrounding territory. Generally speaking, a central warehouse is located in a large city and acts as a source of supply for respondent's branches located in that city and in surrounding territory. When need arises in the branch offices for material or equipment which is not there on hand or in stock, such is ordered direct from the factory and, in the cases of small branches, the order generally goes direct to the factory rather than to a central warehouse. Respondent also sells repair and replacement parts for its equipment to independent furnace servicing concerns or individuals, which are obtainable from the branch offices. Also the branches, on occasion, exchange material between themselves when necessary, although this is not general, the branches, being under instruction to order their needs direct from the factory. The branch offices of the respondent extend throughout the United States with the exception of three or four states in the far south. Deliveries are made by respondent preferably by means of automobile trucks, such trucks not only delivering supplies to the appropriate consignees but, on return trips, haul back to the factory at Holland, Michigan, scrap metal and old equipment for recovery purposes. Where exceedingly long hauls are involved, as for instance from Holland to the States of Washington, Oregon, or California, deliveries may be made by railroad freight.

"This system of operation has been substantially the same since the year 1934.

\* \* \* \* \*

"4. Respondent maintains, and has maintained, a course of trade in its products aforesaid, in commerce among and between the various states of the United States and in the District of Columbia to such extent as to make it amenable to the jurisdiction of the Federal Trade Commission under the provisions of the Federal Trade Commission Act as 'interstate commerce' is defined in said Act.

"For a long period of time respondent operated a branch office in the City of Washington, D. C. Respondent furnished certain papers \* \* \* showing that from the year 1936 through 1942 respondent operated a branch office in the City of Washington, D. C.; from 1943, to and including 1948, this office was designated a subbranch; during the years 1949, 1950 and 1951, this outlet reassumed its status as a branch, and from 1952 to June 30, 1954, was designated as a subbranch. The complaint in this case is dated May 4, 1954, so the foregoing constitutes an admission that respondent was operating in the Washington territory subsequent to the date of the complaint herein. Testimony shows that although respondent claims to have abandoned operations in the Washington, D. C. area it continued to do business therein through the instrumentality of its Baltimore, Maryland, branch, and that if a homeowner in this area had a Holland furnace which needed parts and wrote to the respondent at its home office, the latter would refer the inquiry to the nearest branch, which in this instance would be Baltimore, Maryland, which branch would first dispatch a salesman to ascertain exactly what was needed, and upon determination thereof an agreement would be executed and the material would be delivered through the Baltimore Branch.

"The respondent's manager of the Baltimore branch testified that sales are made in the Washington area through the Baltimore branch and that equipment is delivered in Washington from Baltimore by means of the respondent's own truck, or by the trucks of their mechanics; that the Holland Furnace Company has a Washington telephone number with the calls thereon being taken by a so-called 'answering service' and relayed to the Baltimore office, and that this telephonic arrangement was in effect in the Baltimore branch when this particular manager took over; that the Baltimore branch does not at present have a subbranch in Washington, D. C.; that he had handled complaints from the Washington area and had been instrumental in resolving such complaints.

"There are also of record twelve exhibits which show actual sales of respondent's equipment and repair services through the instrumentality of the Washington, D. C. office, in the States of Virginia and Maryland, as well also in the District of Columbia; there is also an exhibit of record showing a sale from

Commission Act?" In his first conclusion the examiner said: "The contentions of the respondent to the contrary notwithstanding, it is found that respondent was, at all times touched upon herein, engaged in interstate commerce as such is defined in the Federal Trade Commission Act and under the many court decisions interpretative of said Act." The examiner ordered that Holland and its "officers, agents, representatives, and employees, * * * in connection with the offering for sale, sale or distribution in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of furnaces, heating equipment, or parts therefor, do forthwith cease and desist from" various designated representations, misrepresentations and acts which the examiner had found to be unfair methods of competition in commerce and unfair and deceptive acts and practices in commerce.

Holland appealed to the Commission from the initial decision and order of the examiner. After hearing, the Commission rendered its opinion and entered a final order adopting as its own the hearing examiner's initial decision, including its findings, conclusions and order.

The pertinent language used by the Commission in its opinion appears in the margin.[4]

an Indiana branch of respondent to an Illinois customer.

"The exhibits * * * show the locations of respondent's eleven central warehouses and its numerous branch and subbranch warehouses strategically located throughout the United States, while a glance at a map of the United States, prepared by respondent, will disclose its widespread, nation-wide, activities which have enabled it to effect gross annual sales which, according to one witness, has reached $30,000,000.00. * * * a quotation from the 1952 Annual Report of the corporation, over the signature of its President, 'by order of the Board of Directors' is revealing:

" 'As you may possibly know, your company is the only manufacturer in the heating industry which retails. The public cannot buy heating equipment direct from any other factory—only from dealers who sell under their own names. Our branch system throws the complete responsibility for all the actions of its personnel, as well as the functioning of its equipment, directly upon the company. * * *'

The said report then goes on to point out:

" 'Clearly, our 15,000,000 customers have found this policy gratifying.'

     *     *     *     *     *

"5. Respondent is now, and has been at all times herein mentioned, in substantial competition with other persons, firms and corporations engaged in the manufacture, sale and distribution of furnaces, heating equipment, and parts therefor. While respondent admits the charge of competition, it denies that such competition took place in interstate commerce. The fact that the respondent has been engaged in interstate commerce having been specifically found to be true in the preceding finding, it is not felt necessary to analyze further the testimony of record in support of this finding. * * *"

4. "The record discloses Holland owns and operates some 475 branch offices, or retail outlets, as well as a number of subbranches. Salesmen or house-to-house canvassers sell respondent's products with gross annual sales amounting to about $30 million. All sales effected by the Holland Furnace Company or its representatives are to the ultimate purchasers and users of such equipment. Respondent does not ship furnaces as units but sends quantities of essential parts to central or branch warehouses. * * *

" * * * The heating equipment involved is manufactured in Holland, Michigan, and shipped from there and sold by respondent's authorized representatives on a nationwide basis in some forty-five states through Holland's own retail outlets. * * *

"Contracts between respondent and branch managers and salesmen; correspondence between the home office in Michigan and field personnel; those contracts between respondent's salesmen and a purchasing public on respondent's behalf which must be accepted by the home office; and representations made by salesmen in selling respondent's products—all are part and indicate a pattern of conduct in commerce within the meaning of the Federal Trade Commission Act.

"Furthermore, there is record evidence that sales were made from respondent's Baltimore, Maryland, branch in the District of Columbia and in Virginia; that

To clarify the issues and make clear the positions of the respective parties, excerpts from their briefs appear in the margin.[5]

The controlling legislation is found in paragraphs (1) and (6) of Sec. 5(a) (15 U.S.C.A. § 45(a)(1) and (6) of said act which read:

"(1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful. * * *

"(6) The Commission is empowered and directed to prevent persons; partnerships, or corporations * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

■ The quoted sections of the statute plainly disclose that the reach of the act is controlled and limited by the phrase "in commerce". That the statute should not be applied to transactions which are not "in commerce" was declared in the case of Federal Trade Commission v. Bunte Bros., Inc., 312 U.S. 349, 61 S.Ct. 580, 584, 85 L.Ed. 881. The court said:

"This case presents the narrow question of what Congress did, not what it could do. And we merely hold that to read 'unfair methods of competition in (interstate) commerce' as though it meant 'unfair methods of competition in any way affecting interstate commerce', requires, in view of all the relevant considerations, much clearer manifestation of intention than Congress has furnished."

By its decision the Supreme Court affirmed this court which in disposing of

---

the Niles, Michigan, branch sold in Indiana; that the South Bend, Indiana, branch sold in Michigan; Missouri branches sold in Illinois; and Kentucky branches sold in Ohio. * * * The fact that respondent's products are shipped to respondent's employees at its branch warehouses for subsequent delivery to purchasers does not put an end to the interstate character of the transaction."

5. In its brief Holland says: "For the purposes of this motion, it must, of course, be assumed that Holland committed the acts and engaged in the practices alleged as found by the Commission. The sole question now before this court is, assuming that Holland did engage in such unfair and deceptive practices, was it within the jurisdiction of the Federal Trade Commission to order Holland to cease and desist from such practices?

* * * * *

"Corporations such as Holland, which are engaged in a multi-state business and which ship products to branches, necessarily engage in both interstate and intrastate commerce. While the Federal Trade Commission may have jurisdiction with respect to interstate operations, under the terms of the Act, the Commission has no jurisdiction whatsoever with respect to unfair or deceptive practices used in the intrastate operations of an interstate corporation."

The Commission's brief says, "The sole contested issue is: Whether the Commission correctly concluded that, upon the facts as set forth in the pleadings, the initial decision, and the opinion of the Commission, the methods, acts and practices of Holland Furnace Company which are the subject of this proceeding, are methods of competition in commerce, and acts and practices in commerce, within the coverage of Section 5(a) (1) of the Federal Trade Commission Act.

* * * * *

"These salesmen and solicitors are Holland's agents whose function is to solicit and to consummate sales in the several states. If sales are not made no goods move from Michigan to the other states in which Holland does business. Thus the salesmen and solicitors are an integral and vital part of Holland's interstate sales promotion. * *

* * * * *

"It is our position, of course, that the warehousing of goods in the several states is but an incident of Holland's business and in no way changes the character of the activities engaged in by its solicitors and salesmen. Moreover, it appears that Holland actually ships goods between the branches in fulfillment of contracts and when contracts are negotiated the branches may even secure delivery of the necessary parts directly from Holland. * * *"

the same question in the same case had said:

"The only practices with which the Commission may concern itself are transactions 'in interstate commerce.' * * * The words, the meaning of which we are to construe, are definitely 'in commerce' not 'affecting interstate commerce.'

\* \* \* \* \* \*

"* * * If an extension of the Federal Trade Commission's jurisdiction be advisable so as to include practices affecting interstate commerce, it is for Congress, not the court to make the change." Bunte Bros., Inc. v. Federal Trade Commission, 7 Cir., 110 F.2d 412, 416.

Holland concedes that it is engaged in interstate commerce but claims that it is also engaged in intrastate commerce and that all acts of unfair competition and deception by its salesmen and servicemen found by the Commission were committed in the intrastate phase of its business. This contention is based on the claim that all of its sales, distribution and installations are made within any given state subsequent to the time when its products have come to rest in its warehouse or warehouses in such state and are no longer in interstate commerce. This claim seems to be refuted in part, at least, by the findings that Holland made sales in the District of Columbia through a branch and subbranch located in said District over a period of many years and through a subbranch from 1952 to June 30, 1954, and made other sales therein through the Baltimore, Maryland, branch; made other sales of respondent's equipment and repair service through the instrumentality of the Washington, D. C. office in the states of Virginia and Maryland, as well as in the District of Columbia; that the Niles, Michigan, branch sold in Indiana; that the South Bend, Indiana, branch sold in Michigan; Missouri branches sold in Illinois and Kentucky branches sold in Ohio; also, a sale from an Indiana branch of respondent to an Illinois customer. Though these particular findings of interstate transactions may be applicable to a comparatively small portion of the vast operations conducted by Holland they seem sufficient to negative Holland's contention that the Commission under its findings, is wholly without jurisdiction. Whether or not the findings just mentioned are sufficient to uphold an order by the Commission to cease and desist requires a consideration of the merits and from this we refrain.

■ After due consideration of the principles declared in Bunte and other applicable decisions we are of opinion that under the facts found by the Commission, as hereinbefore set out, the Commission was correct in its holding that it had jurisdiction in the case. We hold as did the Commission that the acts, representations and conduct of Holland's employees in selling and distributing Holland's furnaces and parts, whether before or after such products had been warehoused in the state where sold and distributed, were in commerce within the meaning of the Federal Trade Commission Act. In its opinion the Commission said, correctly we think:

"* * * The heating equipment involved is manufactured in Holland, Michigan, and shipped from there and sold by respondent's authorized representatives on a nationwide basis in some 45 states through respondent's own retail outlets. A realistic view of respondent's activities in moving its products from Michigan across state lines to accomplish its stated purpose of direct sales to ultimate consumers through '500 Direct Factory Branches Serving Over 15,000,000 Customers' admits of no other conclusion than that respondent is engaged 'in commerce.'

"Contracts between respondent and branch managers and salesmen; correspondence between the home office in Michigan and field personnel; those contracts between respondent's salesmen and the purchasing public on respondent's behalf which must be accepted by the home office; and representations made by salesmen in selling respondent's products—all

are part and indicate a pattern of conduct in commerce within the meaning of the Federal Trade Commission Act."

In making the foregoing statements the Commission had before it the evidence that in its 1952 Annual Report Holland asserted to its stockholders:

"* * * The public cannot buy heating equipment direct from any other factory—only from dealers who sell under their own names. Our branch system throws the complete responsibility for all the actions of its personnel, as well as the functioning of its equipment, directly upon the company. * * *

* * * * * *

"Clearly, our 15,000,000 customers have found this policy gratifying."

Under the policy and practice found by the Commission there seems to be no logical point between shipments from the State of Michigan and the sale and delivery of Holland's products through its employees to the ultimate consumer in another state when, in view of the provisions and purposes of the Federal Trade Commission Act, they cease to be in interstate commerce until they rest finally in the possession of the purchaser or ultimate consumer. Without the sales, deliveries and installations made by Holland's salesmen and servicemen from its own warehouses its interstate business would cease. With those sales, deliveries and installations and measured by them Holland has a continuous interstate business reaching into forty-four states. Under such facts the temporary warehousing of the products in each separate state in Holland's own warehouses is but an incident in its interstate business. The work of Holland's salesmen and servicemen create and are an essential part of Holland's vast interstate business and therefore is in commerce and subject to the regulative powers of the Commission.

Holland urges the case of Federal Trade Commission v. Bunte Bros., Inc., supra, as decisive here in its favor. We find it to be clearly distinguishable. In that case, quite contrary to this, the unfair methods of competition sought to be regulated by the Commission were admittedly confined to activities wholly within the State of Illinois relating to goods manufactured in Illinois and which had been at no time in interstate commerce. In the case here the goods were manufactured in Michigan and shipped from that state into at least forty-four other states to be sold and distributed by the manufacturer's own agents and employees to the ultimate consumers.

Holland cites and relies strongly on the case of Ward Baking Co. v. Federal Trade Commission, 9 Cir., 264 F. 330. In that case Ward hauled bread in trucks from one state into another where by means of unfair sales methods, it sold the bread from its trucks to local purchasers. The court held that the sales were local and for that reason the unfair sales methods were beyond the reach of the Federal Trade Commission. It is observed that the court based its conclusion that the sales from Ward's trucks were not in commerce within the meaning of the Federal Trade Commission Act upon the authority of a Supreme Court case relating to alleged interference with interstate commerce by local taxation. Wagner v. City of Covington, 251 U.S. 95, 104, 40 S.Ct. 93, 64 L.Ed. 157, 168. Though the factual situations were similar in the Wagner and Ward cases, entirely different statutes were being applied and the legal principles which were applicable in Wagner, a tax case, were different from those which were properly applicable in the Ward case under the Federal Trade Commission Act. In view of later cases hereinafter discussed we believe that Ward is entitled to little weight here.

Other Federal Trade Commission cases cited by Holland such as Canfield Oil Co. v. Federal Trade Commission, 6 Cir., 274 F. 571; Winslow v. Federal Trade Commission, 4 Cir., 277 F. 206 and California Rice Industry v. Federal Trade Commission, 9 Cir., 102 F.2d 716, have been examined and found to be distinguishable on facts. The same is true of Ewing-Von Allmen Dairy Co. v. C and C Ice Cream

Co., 6 Cir., 109 F.2d 898; Lawson v. Woodmere, 4 Cir., 217 F.2d 148 and Brosious v. Pepsi-Cola Co., 3 Cir., 155 F.2d 99, which were Sherman Anti-trust cases. We have also examined Walling v. Goldblatt, 7 Cir., 128 F.2d 778; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 and Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, Fair Labor Standards Act cases which are not only distinguishable factually but because the purpose of the statute being applied in those cases is essentially different from the purpose of the Federal Trade Commission Act.

Though the Commission has cited no authority precisely in point, there are cases with facts sufficiently similar to make the holdings therein persuasive if not completely authoritative in support of the Commission's jurisdiction. The nearest in point is Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 71 S.Ct. 240, 244, 95 L.Ed. 239, which went from this court, 173 F.2d 210, to the Supreme Court. In that case Standard received interstate shipments of crude oil for refining at its refinery at Whiting, Indiana. A portion of the gasoline so produced was shipped by tankers on the Great Lakes from Whiting to Standard's marine terminal at River Rouge, Michigan, and was there stored in bulk where it remained for varying periods under ownership by Standard until sold and delivered to its customers in the Michigan area, including Detroit. In the autumn sufficient gasoline was stored to meet winter demands. The gasoline was not taken to River Rouge pursuant to orders already taken, though the demands of the Michigan territory were fairly constant, and the customers' demands could be accurately estimated. The court said: "Such temporary storage of gasoline as occurs within the Detroit area does not deprive the gasoline of its interstate character. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735." That the case involved price discriminations under and in violation of Sec. 2(a) of the Clayton Act, as amended, 15 U.S.C.A. § 13, does not affect the question of inter-

state commerce within the meaning of the Federal Trade Commission Act.

In the same case this court speaking of Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, as being analogous said:

"In that case, the livestock came by carrier interstate and intrastate into the receiving pens of the stockyards where the animals were fed, watered, and held until sales were consummated, either to the packers who drove them across the street to the packing house, or to the wholesale dealers or feeders who reshipped them. The transportation was broken at the yards. The animals came to rest, but the stream of commerce moved on to final destination; and the stockyards, with its holding pens, was held to be in commerce, just as here the various changes in the manner of movement may have slowed down the stream of commerce between Whiting and Michigan, but never stopped it. The tanks at River Rouge were similar to a 'packing house' on the way to market. The tank cars and trucks were the most convenient 'packages' that could be used to complete the distribution of the gasoline. It is unlike Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778, where the warehouse was only a detached stockroom for retail stores of a retailer. There the stream of commerce ended at the warehouse for the most part. Here it reached at River Rouge only an intermediate stage preliminary to its final disposition to the petitioner's customers.

"We decline, as the Supreme Court did in Stafford v. Wallace, supra, 258 U.S. at page 519, 42 S.Ct. at page 403, 66 L.Ed. 735, 23 A.L.R. 229, ' * * * to defeat this purpose in respect of such a stream and take it out of complete national regulation by a nice and technical inquiry into the noninterstate character of some of its necessary incidents and facilities, when considered alone and without reference to their associa-

tion with the movement of which they were an essential but subordinate part.'" [173 F.2d 214.]

Holland argues earnestly that its warehouses and subsequent retail sales therefrom are different from the storage facilities of Standard at River Rouge and its deliveries therefrom to its distributors in Michigan. Yet, on principle there is no dissimilarity in so far as the application of the Federal Trade Commission Act is concerned. In the Standard case the Federal Trade Commission exercised power over local sales made by Standard from gasoline in storage which had been shipped from another state and here the Commission seeks to exercise its power over local sales by Holland which are filled from storage of products owned by Holland and shipped by it from another state. In each case the interstate commerce was wholly dependent on the sales made subsequent to storage in connection with which unfair and deceptive practices were used and kept moving through estimates of future needs created by said sales. To hold that such unfair and deceptive practices were beyond the regulatory powers of the Federal Trade Commission because of such temporary storage would be to permit a "technical legal conception" to destroy a "practical one, drawn from the course of business." Swift & Co. v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 49 L.Ed. 518.

The case of Ford Motor Company v. Federal Trade Commission, 6 Cir., 120 F.2d 175, 183, certiorari denied 314 U.S. 668, 62 S.Ct. 130, 86 L.Ed. 535, is closely in point. Ford was ordered to cease and desist from using a misleading financing plan and advertisement in connection with installment sales of its cars through local dealers who had purchased the cars from Ford for resale locally. Ford filed petition for review of the Commission's order. The court having found that such dealers were aided in promoting such resales through use of the unfair financing plan and misleading advertising and that they constituted unfair competition said:

"All of those things which stimulate or decrease the flow of commerce, although not directly in its stream, are essential adjuncts thereto and the Congress has power to confer on the Federal Trade Commission their regulation."

Citing Stafford v. Wallace, supra. The court said further:

"The sale on credit of petitioner's cars by its local dealers, when separately considered, may be intrastate in character but when the activities of petitioner's local agencies are weighed in the light of their relationship to the petitioner, and its financing sales of cars, it is at once apparent that there is such a close and substantial relationship to interstate commerce that the control of such activities is appropriate to its protection."

Among other cases found helpful in defining the jurisdiction of the Federal Trade Commission are General Motors Corp. v. Federal Trade Commission, 2 Cir., 114 F.2d 33, certiorari denied 312 U.S. 682, 61 S.Ct. 550, 85 L.Ed. 1120; Progress Tailoring Co. v. Federal Trade Commission, 7 Cir., 153 F.2d 103; International Art Co. v. Federal Trade Commission, 7 Cir., 109 F.2d 393; Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; Consumers Home Equipment Co. v. Federal Trade Commission, 6 Cir., 164 F.2d 972; Goodman v. Federal Trade Commission, 9 Cir., 244 F.2d 584; Federal Trade Commission v. Hoboken White Lead & Color Works, Inc., 2 Cir., 67 F.2d 551; Carter Carburetor Corporation v. Federal Trade Commission, 8 Cir., 112 F.2d 722.

Our study of the cases showed that seldom were two cases found relating to the jurisdiction of the Federal Trade Commission in which the facts were alike and we were impressed by the truth of the statement in more than one opinion that each case must be ruled by its own particular facts.

In the light of Standard Oil Co. v. Federal Trade Commission, supra; Ford Motor Co. v. Federal Trade Commission, supra; and the authorities subsequently mentioned it seems plain that the local sales by Holland through its own employees, filled from Holland's warehouses to which its products were shipped in interstate commerce prior to such sales, have such close and substantial relation to interstate commerce as to bring them within the regulative powers and jurisdiction of the Federal Trade Commission. We hold that the findings of the Commission herein adequately support its jurisdiction and that Holland's contentions to the contrary are without merit.

Holland's motion to vacate the Commission's order on jurisdictional grounds is denied.