**BUNTE BROS., Inc., v. FEDERAL TRADE COMMISSION.**

**No. 6651.**

Circuit Court of Appeals, Seventh Circuit.

May 17, 1939.

Rehearing Denied July 8, 1939.

Samuel G. Clawson, of Chicago, Ill. (Samuel G. Clawson and Le Roy R. Krein, both of Chicago, Ill., of counsel), for petitioner.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and P. C. Kolinski and James W. Nichol, Sp. Attys., all of Washington, D. C., for respondent.

Before SPARKS, MAJOR, and TREA-NOR, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review an order of the Federal Trade Commission entered February 19, 1938 under Section 5 of the Federal Trade Commission Act, 15 U.S.C. 45, 15 U.S.C.A. § 45, in reference to unfair methods of competition in commerce, which order involves, among other things, the interstate shipment of candy described as "break and take" and "punchboard assortments." The order is based on findings of the Commission made after hearings held on an amended complaint issued January 7, 1936. The original complaint against petitioner was issued May 1, 1930, involving only the "break and take" assort-

ments. As to this, petitioner did not contest and an order was entered by the Commission April 3, 1934. This order was set aside January 17, 1936, when the amended complaint was filed, covering both candy assortments.

The Commission found, among other things, that petitioner is an Illinois Corporation, with its principal place of business in Chicago; that it has been for several years engaged in the manufacture of candies and in the sale and distribution thereof to wholesalers, jobbers and retail dealers located in all states of the United States, and makes its shipments interstate. It was found that petitioner, prior to April 1, 1934, shipped in interstate commerce assortments of candy known in the candy trade as "break and take" assortments; that such assortments consist of a number of pieces of candy retailing for one cent each and with differently colored centers and a few larger bars; that the smaller pieces of candy purchased for one cent each are broken open by the purchaser to determine the color of the center; that some pieces with certain colored centers and the last piece in the assortment entitle the purchasers thereof to a larger bar of candy free of charge; that the assortments comprise both the smaller pieces of candy and the prizes and are sold by the petitioner as a unit to the purchasers of such assortments. The Commission found that on or about April 1, 1934, the petitioner discontinued the sale and distribution of assortments similar to those just described to purchasers located in states other than the State of Illinois.

The Commission also found, among other things, that the petitioner ships in interstate commerce, assortments of candy consisting of a number of boxes of candy accompanied by a punchboard; that a punchboard is a cardboard device containing pieces of paper with printed numbers; that the numbers on each board are effectively concealed from the purchasers until a punch or selection has been made and a particular punch selected from the board; that the punches or chances sell for five cents each; that purchasers of chances who select winning numbers are given one of the boxes of candy without additional charge; that the purchasers of chances who do not select winning numbers receive nothing but the privilege of punching a number from the board; that some of the boards distribute boxes of candy and other articles of merchandise as prizes

to purchasers selecting or punching particular numbers. The packages of candy in the assortments consist of one or two pound boxes which range in retail price from sixty cents to $5 per box; these assortments consisting of boxes of candy and a punchboard are sometimes referred to as "deals."

The above related facts as to both the "break and take" and "punchboard assortments" are not in dispute. In fact, they are conceded by petitioners. It is also admitted that each candy assortment involves the use of chance and that such use is contrary to public policy.

It is also agreed by the petitioner that the use of chance prior to April 1, 1934, in the "break and take" assortments constituted an unfair method of competition under the Act in question. It is agreed that the sale of penny candies by the aid of the element of chance in such assortments necessarily injures its competitors and that proof of such is unnecessary. The only question raised with reference to the Commission's order insofar as it pertains to this assortment is that inasmuch as petitioner had made a report of compliance to the Commission, that it would cease and desist from selling such assortments in interstate commerce and that a finding to such effect was made by the Commission, that the Commission's order in respect thereto is unauthorized or justified. This contention can not be sustained. The Act in question provides: "Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in commerce * * * it shall issue and serve * * * a complaint, etc. * * *."

It seems obvious that the words "has been" in the language just quoted authorize the Commission to issue its cease and desist order notwithstanding the unfair method complained of has been discontinued. This construction of the statute is sustained by the great weight of authority.

In Federal Trade Commission v. Goodyear Company, 304 U.S. 257, 260, 58 S.Ct. 863, 864, 82 L.Ed. 1326, the court said: "Discontinuance of the practice which the Commission found to constitute a violation of the Act did not render the controversy moot."

This court, in Federal Trade Commission v. A. McLean & Son, 7 Cir., 84 F.2d

910, 913, with reference to this same question, said: "Discontinuance or abandonment is no defense to the order, for, if true, it would be no guaranty that the challenged acts will not be renewed. Federal Trade Commission v. Wallace (C.C.A.) 75 F.2d 733. The benefit to respondents of an abandonment may be fully protected by their report to the Commissioner as required by the Commission's order."

In Federal Trade Commission v. Wallace, 8 Cir., 75 F.2d 733, 738, the court said: "Respondent says that he ceased his 'admitted activities' at once when this cause was filed. Abandonment will not be presumed and, even though pleaded and presently effective, is no bar to the entry of an enforcement order."

■ Petitioner's attack upon the Commission's order as it affects the "punchboard assortments" is somewhat difficult for us to comprehend. After conceding that such assortments involve the use of chance and is violative of public policy, it argues that the sale of such assortments is not an unfair method of competition under the Act. We find this statement in petitioner's reply brief: "If this court determines that the use of chance in connection with the distribution of merchandise is an unfair method of competition per se under all circumstances, regardless of the manner in which it is used or its effect, then the court must decide that the Commission had jurisdiction."

Apparently, the distinction which is sought to be made between the instant case and the many adjudicated cases wherein the courts have considered and sustained the Commission's order under the same or similar circumstances, is the use made by the retailer of the condemned device. It is this use which is finally made upon which petitioner premises its argument that there is no competition with the sale of legitimate candy, and that the only competition afforded is with other punchboard operators or gambling devices. This fanciful theory is thus illustrated by petitioner: "A customer with $1 in his pocket intending to buy a box of candy goes into a drug store and passes a counter with candy punchboards. He hesitates, attempting to decide between his desire to buy the candy and his desire to gamble. He finally prefers the punchboard and plays his entire dollar away on it. He either gets nothing for his dollar or wins a box of candy. In either case he does not buy the candy

he came in to buy. There is diversion here from the person who manufactured the box of candy to the manufacturer of the punchboard assortment. Had the manufacturer of candy also manufactured punchboard assortments he could have had an even chance at this customer's dollar; by not doing so he has lost the business that might be obtained had he manufactured and sold punchboards."

Then it is argued: "There has been diversion here but there is no competition. The want or desire to gamble on the punchboard is not the same desire or want as the desire or want to eat candy. One set of competitors compete with each other to supply the want or the desire to gamble; a completely different set of competitors compete with each other to supply the want or desire for candy."

We are unable to subscribe to such theory. To us it is devoid of all logic. The customer who spends his dollar on a candy punchboard does so with the expectation of acquiring a box of candy. If he succeeds he has procured a box of candy which otherwise he would have purchased as a cash sale. If, however, he spends his dollar on the punchboard and wins nothing, his money is gone and there will be no cash sale of a box of candy. In either event, the dealer who offers his candy for cash has been deprived of a sale and his business reduced and interfered with to that extent. We think it is a fallacy to say there has been a diversion but no competition. It is difficult for us to understand how a competitor could be injured except by diverting his business. The one who is responsible for that diversion is a competitor and if the diversion is occasioned by a gambling apparatus which is contrary to public policy, per se, we think, unquestionably, such a method constitutes unfair trade practice as defined by the Act.

We are familiar with no case where this precise question has been determined, yet there are cases where competition apparently is recognized to result from diversion. In Federal Trade Commission v. Winsted Company, 258 U.S. 483, 493, 42 S.Ct. 384, 385, 66 L.Ed. 729, it is said: "For when misbranded goods attract customers by means of the fraud which they perpetrate, trade is diverted from the producer of truthfully marked goods."

In Federal Trade Commission v. Raladam Co., 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191, where the or-

der of the Commission was reversed for failure to show competition, the court, in discussing the matter, 283 U.S. on page 653, 51 S.Ct. on page 592, 75 L.Ed. 1324, 79 A.L.R. 1191, said: "It is impossible to say whether, as a result of respondent's advertisements, any business was diverted, or was likely to be diverted, from others engaged in like trade, * * *."

In Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 308, 54 S.Ct. 423, 425, 78 L.Ed. 814, which we think is decisive of the case here, the court said: "Upon the record it is not open to question that the practice complained of is a method of competition in interstate commerce and that it is successful in diverting trade from competitors who do not employ it."

And again 291 U.S. on page 313, 54 S. Ct. on page 426, 78 L.Ed. 814: "A method of competition which casts upon one's competitors the burden of the loss of business unless they will descend to a practice which they are under a powerful moral compulsion not to adopt, even though it is not criminal, was thought to involve the kind of unfairness at which the statute was aimed."

■ If, however, there were any merit in petitioner's contention concerning the form which its business takes in the retail trade, it would constitute no defense to the order complained of for the reason that the order only runs against interstate sales of "chance" candy to dealers. The means employed by the dealer in disposing of the candy is of little consequence. Petitioner sells to jobbers, wholesalers and dealers, candy in an assortment which includes a punchboard as a means to be used in its final disposition. In such business he is in direct competition with the candy manufacturer who is engaged in the sale of his product for cash. The latter, under such circumstances, is not able to successfully compete with such a method. As a result, he must either suffer a loss of business or engage in a method which, admittedly, is a species of gambling and contrary to public policy.

The court, in Federal Trade Commission v. Winsted Company, supra, 258 U.S. page 494, 42 S.Ct. page 386, 66 L.Ed. 729; said: "The honest manufacturer's business may suffer, not merely through a competitor's deceiving his direct customer, the retailer, but also through the competitor's putting into the hands of the retailer an unlawful instrument, which enables the re-

tailer to increase his own sales of the dishonest goods, thereby lessening the market for the honest product."

There the court was dealing with the use of false and deceptive brands and labels attached to merchandise. Much stronger language, we think, would be appropriate in the instant case where the sales of petitioner's product are enhanced by the use of a gambling device sold in connection therewith and placed in the hands of the retailer for the purpose of increasing its sales.

Owing to the narrow question which petitioners here raise, it would serve no good purpose for us to cite or review the many authorities where the Act in question has been construed and discussed. In the recent case of Helen Ardelle, Inc. v. Federal Trade Commission, 9 Cir., 101 F.2d 718, the court sustained the order of the Commission under facts almost identical with those here presented.

A study of the authorities and the record convinces us that the order of the Commission was justified, both by the law and the facts.

The same is affirmed.