**NATIONAL LABOR RELATIONS BOARD**
**v. PLANTERS MFG. CO., Inc.**
**No. 4463.**

Circuit Court of Appeals, Fourth Circuit.
July 26, 1939.

Ruth Weyand, of Washington, D. C., Atty., National Labor Relations Board (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Mortimer B. Wolf, Bertram Edises, and Ramey Donovan, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for petitioner.

Gerould M. Rumble, of Norfolk, Va. (Rumble & Rumble, of Norfolk, Va., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and WYCHE, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition of the National Labor Relations Board, asking for the enforcement of an order issued by the Board against the Planters Manufacturing Company, Incorporated, a Virginia corporation, here referred to as the respondent, having its principal office and plant at Portsmouth, Virginia. The petition was filed pursuant to Section 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 160(c). The respondent manufactures and sells wooden baskets, hampers, crates, and other containers used in the packing and shipping chiefly of agricultural products. Its sales are made to farmers, retailers, jobbers, and wholesalers. Respondent's business is highly seasonal and the number of its employees varies from an average of 450 employees during the year 1936 to about 1,000 employees during the second and third quarters of the year 1937. The value of respondent's finished products in the year 1936 was $750,000.

Upon charges filed by United Veneer Box and Barrel Workers Union, C. I. O., later known as Local Industrial Union No. 485, here referred to as the Union, the

Board by its Regional Director for the Fifth Region (Baltimore, Maryland) issued a complaint dated November 8, 1937, against the respondent alleging that the respondent had engaged in and was engaging in unfair labor practices affecting commerce within the meaning of Section 8(1) and (3) and Section 2(6) and (7) of the N.L.R.A., 49 Stat. 449, 29 U.S.C.A. §§ 152(6, 7), 158(1, 3).

The complaint alleged in substance that the respondent 'on or about August 20, 1937, discriminated in regard to the hire or tenure of employment of forty of its employees, named in the complaint, because of their union affiliation and organizational activity, thereby discouraging membership in the union; that by these and other acts the respondent interfered with, restrained, and coerced its employees in the exercise of the right to self-organization and to engage in concerted activities for mutual aid or protection. On November 16, 1937, the respondent filed an answer traversing generally the material allegations of the complaint and denying specifically that the respondent was engaged in or that its operations affected, interstate commerce. At the hearing the complaint was amended by the addition thereto of the name of one other employee alleged to have been discriminated against by the respondent.

On September 22, 1937, a petition in behalf of the union was filed with the Regional Director, alleging that a question affecting commerce had arisen concerning the representation of employees of the respondent, and requesting an investigation and certification of representatives pursuant to Section 9(c) of the Act, 29 U.S. C.A. § 159(c). On October 4, 1937, the Board, acting pursuant to Section 9(c) of the Act, and Article III, Section 3 and 10(c) (2) and Article II, Section 37(b) of National Labor Relations Board Rules and Regulations—Series 1, as amended, ordered an investigation and a consolidation of the two cases for purposes of hearing and authorized the Regional Director to conduct the investigation and to provide for an appropriate hearing upon due notice. Thereafter, notice of the hearing in the consolidated cases was duly served upon the respondent and upon the union.

Pursuant to the notice a hearing was held in November and December, 1937, at Portsmouth, Virginia, before a Trial Examiner duly designated by the Board. The Board, the Union, and the respondent were represented by counsel and participated in the hearing.

During the hearing the respondent moved to dismiss the proceedings on the ground that the employees named in the complaint were not at the time of the alleged unfair labor practices members of an existing labor organization. This motion the Trial Examiner denied, holding that the employees in question were members of the union now known as Local Industrial Union No. 485, formerly known as United Veneer Box and Barrel Workers Union.

On March 7, 1938, the Trial Examiner filed his Intermediate Report, copies of which were duly served on all parties, finding that the respondent had engaged in and was engaging in unfair labor practices affecting commerce and recommending that the respondent cease and desist from its unfair labor practices, reinstate with back pay certain of its employees found to have been discriminatively discharged by the respondent, make whole certain other employees found to have been discriminatively laid off, and take other specified action to remedy the situation brought about by the unfair labor practices.

On March 17, 1938, the respondent filed exceptions to the Intermediate Report. On July 5, 1938, pursuant to notice, a hearing for the purpose of oral argument on the exceptions and record was held before the Board in Washington, D. C. The respondent was represented by counsel and participated in the argument.

The Board made certain findings of fact and announced its conclusions of law, upholding the report of the Trial Examiner, and entered the following order:

"Upon the basis of the findings of fact and conclusions of law, and pursuant to Section 10(c) of the National Labor Relations Act, the National Labor Relations Board hereby orders that the respondent, Planters Manufacturing Company, Inc., and its officers, agents, successors, and assigns shall:

"1. Cease and desist from:

"(a) Discouraging membership in Local Industrial Union No. 485, C. I. O., or any other labor organization of its employees, by discriminating in regard to hire or tenure of employment or any term or condition of employment;

"(b) In any other manner interfering with, restraining, or coercing its employees

in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection.

"2. Take the following affirmative action, which the Board finds will effectuate the policies of the Act:

"(a) Offer to Willie Jones, Willie Butts, Joseph Wallace, Rudolph Thrower, George Williams, Freddie Sexton, John McCarris, Harvey Ellis, McKinley Simmons, John Harris, Relyus Evans, and Hattie Williams immediate and full reinstatement to their former positions, and to John White immediate and full reinstatement to the position which he held when he was discharged on September 9, 1937, without prejudice to their seniority rights and other rights and privileges; and make each of said persons whole for any loss of wages suffered by reason of his or her discharge, by payment to each of them a sum equal to the amount which he or she normally would have earned as wages during the period from the date of such discharge until the date of the offer of reinstatement, less his or her net earnings during such period; deducting, however, from the amount otherwise due to each of them, monies received by him or her during said period for work performed upon Federal, State, county, municipal, or other work relief projects, and pay over the amount so deducted to the appropriate fiscal agency of the Federal, State, county, municipal or other government or governments which supplied the funds for said work relief projects;

"(b) Make whole Eli Gibbs for any loss of wages suffered by reason of his discharge, by payment to him of a sum equal to the amount which he normally would have earned as wages during the period from the date of the discharge until the date of his obtaining the employment referred to in his testimony, less his net earnings during such period; deducting, however, from the amount otherwise due to Eli Gibbs, monies received by him during said period for work performed upon Federal, State, county, municipal, or other work relief projects, and pay over the amount so deducted to the appropriate fiscal agency of the Federal, State, county, municipal or other government or governments which supplied the funds for said work relief projects;

"(c) Post immediately, and keep posted for a period of at least thirty (30) consecutive days from the date of posting, copies of this Order in conspicuous places throughout its plant together with a statement by the respondent that it will abide by and comply with this Order; and

"(d) Notify the Regional Director for the Fifth Region within ten (10) days from the date of this Order what steps the respondent has taken to comply herewith.

"And it is further ordered that the allegations of the complaint with respect to Floyd Burke, Viola Clanton, William Coates, Nina Council, William Dickens, William Hawkins, Isaiah McCall, Charlie Nusom, Jr., Eddie Simmons, Gabriel Spreull, La Nelle Yates, John Evans, Herbert Harrell, Curtis Hardy, Berry Hawkins, William Shine, Bernice Yates, Eddie Pittman, Charlie Richardson, Lazarus Winslow, Jeff Hardy, Joe Howard, John Covington, Charlie Nusom, Floyd Barnes, William Towns, and Tom Deans, be, and the same hereby are, dismissed."

There were also provisions in the order relative to an election with which we are not here concerned.

We have first to consider whether the N. L. R. Act is applicable to the respondent. On this point the Board found as a fact that from two to five percent. of the raw materials used in respondent's manufacturing operations was shipped to it from outside the State of Virginia and that from ten to twenty percent. of respondent's finished products was shipped to points outside the State of Virginia. The total value of the finished products so shipped to places in other states in the year 1936 was between $75,000 and $150,000. The baskets, hampers, crates, and other containers sold by respondent within the State of Virginia, are, often shipped outside the state when they have been filled with food products. Respondent competes in its sales in Virginia with manufacturers of similar containers whose plants are located in other states.

Upon the admitted facts presented by the record here, we are of the opinion that the Act is applicable to the respondent and the employees here involved. The test of the applicability of the Act to an industrial concern is whether "stoppage of * * * operations by industrial strife" at the plant involved would result in interference with the flow of interstate com-

merce. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Consolidated Edison Co. et al. v. National Labor Relations Board et al., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

Nor is it important that the volume of interstate business, though substantial, is relatively small. "The power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small." National Labor Relations Board v. Fainblatt, 59 S.Ct. 668, 671, 83 L.Ed. 1014.

"It is plain that the provision cannot be applied by a mere reference to percentages, and the fact that petitioner's sales in interstate and foreign commerce amounted to 37 per cent., and not to more than 50 per cent., of its production cannot be deemed controlling." Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 661, 82 L.Ed. 954. See, also, Consolidated Edison Co. et al. v. National Labor Relations Board et al., supra.

In National Labor Relations Board v. Eagle Mfg. Co., 4 Cir., 99 F.2d 930, will be found a citation of cases decided by this court involving this question.

The fact that the substantial interstate parts of respondent's business are so closely connected with intrastate aspects, that the regulation of the former is impossible without incidentally regulating the latter, necessarily leads to the extension of the federal regulating power rather than to its restriction.

In Virginia Railway Co. v. System Federation No. 40 et al., 4 Cir., 84 F.2d 641, will be found a discussion of this point, by Judge Parker of this court.

One of the findings of fact made by the Board as to unfair labor practices is that the general superintendent of respondent, who was in authority over the employees, with power to hire and discharge, was violent in his opposition to the organization of a union and expressed his attitude in a rough and profane manner, frequently threatening employees, suspected by him as being members of the union, with violence.

"There can be no question, of course, as to petitioner's responsibility for the statements of its superintendent, which the Board has found upon substantial evidence were intended as a warning against joining an outside union." Virginia Ferry Corporation v. National Labor Relations Board 4 Cir., 101 F.2d 103, 106. See, also, National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951.

The Board further found as a fact that fourteen of the forty-one employees named as having been discriminated against had been discharged or suspended because of alleged union activities. Included in this number were the president, the treasurer, and the secretary of the union. The Board dismissed the charges as to twenty-seven of the employees named in the complaint.

This court is bound by the Board's findings of fact as to matters within its jurisdiction, where such findings are supported by substantial evidence. National Labor Relations Board v. Eagle Mfg. Co., supra.

Without reviewing it in detail, a study of the evidence leads us to the conclusion that there was substantial evidence to support all the findings of the Board. The notice required to be posted by the respondent is in the form repeatedly approved by this court. National Labor Relations Board v. A. S. Abell Co., supra. It follows that the order of the Board was in every respect a proper one and should be enforced.

A decree will be entered directing its enforcement.