412

## BUNTE BROS., Inc., v. FEDERAL TRADE COMMISSION.
### No. 6792.

Circuit Court of Appeals, Seventh Circuit.
Feb. 20, 1940.

Samuel G. Clawson, of Chicago, Ill., for petitioner.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and P. C. Kolinski and James W. Nichol, Sp. Attys., all of Washington, D. C., for respondent.

Theodore E. Rein, of Chicago, Ill., amicus curiae.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Petitioner seeks to set aside an order of the Federal Trade Commission directing it to cease and desist from certain unfair trade practices in the sale of its candy.

The order is based upon findings made by the Commission, after hearings, upon a formal complaint. The complaint charged, and the Commission found, that petitioner

is an Illinois corporation, with its principal place of business in Chicago, Illinois,[1] and that for several years past it has been engaged in the manufacture, sale, and distribution of candies to wholesale dealers, jobbers, and retailers, located throughout the United States, but particularly in the state of Illinois.

The Commission found that petitioner's sales of candies involved the use of chance (commonly known as "break and take") in the sale and distribution to the ultimate consumers thereof. Typical of these assortments is one composed of a number of wrapped caramels, uniform in size, shape and quality, a number of larger pieces of candy, and a box of candy. The majority of caramels in the assortment have the same color center, but a few are of a different color. The purchaser buys a caramel and breaks it open. If its center is of the same color as the majority of the caramels, he receives nothing extra, but if it is of a different color, he is given, without additional charge, one of the larger pieces of candy in the assortment. The purchaser of the last piece of candy of uniform size and shape in each assortment is entitled to receive, without additional charge, the box of candy in the assortment. This assortment was extensively sold in Illinois during the summer months of 1935, and was known as the "Summer Bar Assortment."

It was also found that petitioner manufactures and distributes in Illinois another assortment known as the "Ta-Ka Flyer Bar Assortment." The principle of this assortment is the same as that described above. There are 160 pieces of candy in all, twenty of which have differently colored centers. The pieces are sold to the consumer at a price of one cent each, whereupon they are broken open to ascertain the color of the center. Those who have selected a piece with a differently colored center receive, as a reward, a larger piece of candy, gratis.

Petitioner distributed its assortments to 95% of the candy jobbers in Illinois. During the year 1936, approximately 23% of its total candy business, or $72,300 worth, consisted of the "break and take" variety. All candies are sold through the same type of merchandizing channels. Jobbers who handle chance assortments also handle "straight" goods. Many retail dealers prefer to buy their candy from one jobber because of the convenience in dealing with a single salesman, handling only one order blank, and paying but one bill. The retail dealers who desire chance assortments are, therefore, prone to buy all of their candy from a jobber who sells chance assortments.

The Commission also found that the effect of the practice of petitioner substantially lessened competition to the detriment of its competitors, situated in other states, who also sold candy in the State of Illinois.

Among other matters the Commission found:

"Some out-of-state manufacturers experienced a marked decrease in their sales of straight goods in Illinois * * * when the sale of chance assortments, particularly of the break and take variety, was active * * *. A representative of a New York manufacturer suffered a marked decline in his sales of straight candies in the Illinois market in May and June of 1935 over sales of straight candies in the same market in May and June of 1934. * * * The sales of a Pennsylvania manufacturer of a competing confection, chewing gum, in Illinois in September and October of 1935, were but 74% and 62%, respectively, of his sales in the same market during the same months in 1934. * * * The presence in the Illinois market of 40,000 of respondent's (petitioner herein) break and take chance assortments during the year 1935 was a strong factor contributing to the sales declines these interstate competitors of respondent suffered. * * * A competitor of respondent, located in the state of Wisconsin, who had been ordered, by this commission to cease and desist from the unfair practices which respondent was pursuing, suffered an 80% reduction of sales in Illinois from the $60,000 business of the preceding year. Another Wisconsin competitor who had a $100,000 yearly business was adversely affected 20%."

Upon these findings, the Commission entered its cease and desist order.

Almost identical practices have been condemned in Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 54 S. Ct. 423, 78 L.Ed. 814, as unfair methods of competition within the meaning of section 5 of the Federal Trade Commission Act, 15

[1] See Bunte Bros. v. Federal T. C., 7 Cir., 104 F.2d 996.

U.S.C.A. § 45. Following this decision, we, in Bunte Bros. v. Federal Trade Commission, 7 Cir., 104 F.2d 996, upheld the Commission's order to desist from practices quite similar.

█ We are on secure and undisputed ground, when we assume that an order of the Commission to be valid must be supported by evidence which establishes: (1) The methods used are unfair; (2) The methods of competition condemned must be used in interstate commerce; (3) The proceeding by the Commission to prevent the use of the methods must be in the interest of the public. Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 216, 53 S.Ct. 335, 77 L.Ed. 706.

That the practice complained of herein is unfair, is settled by the decisions. See Bunte Bros. v. Federal Trade Commission, supra, and Federal Trade Commission v. Keppel & Bro., supra.

█ From the findings of the Commission sustained by the evidence, it is equally clear that the instant proceeding is in the public interest. A great percentage of the consuming public buys candy. The Commission found that 48 candy manufacturers located in thirteen different states, and shipping in excess of $1,440,000 worth of "straight" candy from their factories to the state of Illinois annually, were handicapped in attempting to compete with petitioner within the state.[2] It is sufficiently within the public interest, moreover, if the unfair method threatens the existence of potential, as well as existing, competition. Federal Trade Commission v. Klesner, 280 U.S. 19, 28, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838. See also Federal Trade Commission v. Keppel & Bro., supra.

The only debatable question in the case is restricted to the asserted non-interstate character of the business affected by the order. Petitioner denies that its condemned business was or is interstate.

The order was directed against the methods used by petitioner in the state of Illinois. It reads:

"It is Ordered that the respondent, Bunte Bros., Inc., * * * in the offering for sale, sale and distribution of candy, in the State of Illinois, do cease and desist from: * * *"

Section 44, Title 15 U.S.C.A., provides: " 'Commerce' means commerce among the several States or with foreign nations, * * * ."

Section 45(a) provides:

"Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

"The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

Our question may be stated thus: Is an order directed to an Illinois candy manufacturer engaged in distributing its product in the state of Illinois, valid, which commands it to cease and desist from certain unfair practices in the sale and distribution of its candy *in the state of Illinois?*

Petitioner answers in the negative and cites:

Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Federal Trade Commission v. Algoma Lumber Company et al., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655; Federal Trade Commission v. Maisel Trading Post, Inc., 10 Cir., 77 F.2d 246; Minnesota Rate Cases, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18; Winslow v. Federal Trade Commission, 4 Cir., 277 F. 206; Utah-Idaho Sugar Co. v. F. T. C., 8 Cir., 22 F.2d 122; California Rice Industry v. Federal Trade Commission, 9 Cir., 102 F.2d 716; Canfield Oil Co. · v. Federal Trade Commission, 6 Cir., 274 F. 571; Ward Baking Co. v. Federal Trade Commission, 9 Cir., 264 F. 330; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Federal Trade Commission v. Claire Furnace Co., 52 App.D.C. 202, 285 F. 936, reversed on another ground, 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978; Leader v. Apex Hosiery Co., 3 Cir., 108 F.2d 71, November, 1939; United Leather Workers' Int. Union v. Herkert Co., 265 U.S. 457, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A.L.R. 566.

Its chief reliance seems to be the Schechter case.

---

[2] The Commission stated that there were outstanding against 127 competitors of petitioner, orders requiring them to cease and desist from the use of such methods in connection with their sales in interstate commerce.

The respondent contends that "unfair methods of competition in commerce" extend not only to commerce between the states but to intrastate commerce where the unfair practices in the latter field affect the interstate commerce of the same industry. In other words, unfair methods adopted by one who makes and sells his candy in Illinois are subject to the Act if such maker indulges in unfair trade methods and his unfair trade methods affect, and interfere with, interstate commerce in candy. In the instant case the respondent found that petitioner's unfair methods of trade did interfere with and affect the commerce which candy makers of Wisconsin and New York carried on with the retailers in Illinois. As supporting its view it cites:

Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; Federal Trade Commission v. Wallace, 8 Cir., 75 F.2d 733; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Consolidated Edison Co. v. Nat. Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Second Employers' Liability Cases, 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44; National Labor Relations Board v. Planters Mfg. Co., 4 Cir., 105 F.2d 750; Federal Trade Commission v. Keppel & Bros., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814; Ramsay Co. v. Associated Bill Posters, Etc., 260 U.S. 501, 43 S.Ct. 167, 67 L.Ed. 368; National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R 1352; Houston E. & W. Texas Ry. v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Railroad Com. of Wisconsin v. Chicago, B. & Q. R. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A.L.R. 1086; Baltimore & O. R. R. Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878; Oklahoma v. Kansas Natural Gas Co., 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716, 35 L.R.A.,N.S., 1193; Montague & Co v. Lowry, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608; Eastern States Retail Lumber Dealers Ass'n v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L. Ed. 1490, L.R.A.1915A, 788; Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963; United Leather Workers v. Herkert, 265 U.S. 457, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A. L.R. 566; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160; Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Chamber of Commerce v. F. T. C., 8 Cir., 13 F.2d 673; Blankenship v. Kurfman, 7 Cir., 96 F.2d 450; Lake Valley Farm Products Inc. v. Milk Wagon Drivers' Union, 7 Cir., 108 F.2d 436, decided Nov. 29, 1939.

Numerous arguments press for consideration in the disposition of this close and troublesome question.

On the one side the fear is expressed that the more recent decisions of the courts, most noticeable of which are National Labor Relations Board v. Jones & Laughlin Steel Corporation, supra, and Electric Bond & Share Co. v. Securities & Exchange Commission, 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105, have obliterated the heretofore well-defined and well-recognized distinctions between state and Federal Government activities and have perfected a well-nigh completely centralized government. The commonly entertained idea that it is judicial decisions which have led to the disappearance of the local governments as a controlling force in business is erroneous. The enlargement of Federal Government activity is traceable directly to the ever-increasing reach of commerce which has refused to remain static or local. It is this enormous growth in the field of commercial activities which has emphasized the commerce clause of the Federal Constitution, U.S.C.A.Const. art. 1, § 8, cl. 3, and enlarged the scope of its application. This growth of commerce in turn has been the inevitable result of the inventive traits and qualities of our people, whose discoveries have improved old, and created new, instruments of transportation, so that now nearly all commerce is interstate.

Equally significant is the necessity, so apparent in some phases of commerce, for regulation by Congress of intrastate business because its control is essential or appropriate to the regulation of a similar phase of the same commerce but interstate in character. The close, intimate, essential, and inseparable relation of intrastate commerce to interstate commerce, in some fields, makes it necessary to include both, if the legislation is to be effective.

This fear of over-centralization, if real and well grounded, may be overcome either

through non-action by Congress or by Federal legislation which discriminatingly restricts its scope so that our dual system of government is preserved. It is not within the field of judicial action.

Equally pressing has been the argument that when commerce, both state and interstate, is conducted by those who will not abide by "the rules of the game," and whose business ethics are such that they resort to unfair methods of trade in order to get an undue advantage of a competitor and to do so hide behind the protection of state non-action and defy the Federal Government to stop a business thus builded on unfair methods, courts should sustain the efforts of the Federal Trade Commission to stop such unfair practices even though the business be wholly intrastate. The argument is strongly advanced to invoke the Federal commerce clause on the theory that it is both essential and appropriate to regulate the intrastate commerce in such cases because of its close relation to the interstate commerce.

Here, too, the fault lies not with judicial decisions, but is due to two other influences:

First. The unethical practices of so-called business men who believe all is legitimate and proper which is not condemned by statute. Not finding a prohibition "written in their bond," they proceed to take advantage of competitors who have a higher regard for the decencies of competitive efforts.

Petitioner's practices have been condemned by court decisions as unfair, unethical, and contrary to the laws which govern interstate commerce. Its persistence in continuing practices thus condemned may find legalistic but no moral support in this decision. An unfair business practice is still unethical, even though not included within the reach of a statute which prohibits it in interstate commerce. Petitioner limits its field of unethical practices to intrastate commerce where the Federal Government's statute does not apply. Its avoidance of legal liability in no way exculpates it from the charge of foul business practices.

Second. The absence of state legislation dealing with intrastate business, which condemns and prohibits the same unfair practices condemned by the Federal Trade Act.

■■ These arguments for and against our applying the Federal Trade Commission Act to the case before us can not, however, be taken too seriously. The only practices with which the Commission may concern itself are transactions "in interstate commerce." The Commission's authority is to be found in the Act which created it, as amended. The purpose of the Act was to supplement the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, (Federal Trade Commission v. Beechnut Packing Co., 257 U.S. 441, 453, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882) and to prohibit practices which were unfair and destructive of competition "in interstate commerce." On this point there is no doubt. Both the intent and the language of the Act are clear. But when it comes to the field of competition covered by the Act it is less clear and "plain." The words, the meaning of which we are to construe, are definitely *"in commerce"* not *"affecting interstate commerce."*

■ We have been favored with briefs which cite, analyze, distinguish, criticize, or approve nearly all the cases which have been before the courts, involving this Act, as well as many cases which have dealt extensively with the subject of interstate commerce. In view of the exhaustive discussions appearing in the opinions in these cases, further discussion is hardly appropriate. We must assume they state the law as it exists today and that legislation defining "commerce," "in commerce," and "affecting interstate commerce" must be applied in the light of said decisions.

Our conclusion (which is not free from doubt) is that the phase of petitioner's business wherein its practices are unfair is wholly intrastate. It is the phase of petitioner's business which is conducted wholly in Illinois, by an Illinois corporation, which makes and sells its product in Illinois. It is not within the purview of Section 5 of the Federal Trade Commission Act. If an extension of the Federal Trade Commission's jurisdiction be advisable so as to include practices *affecting* interstate commerce, it is for Congress, not the court to make the change.

The petitioner is entitled to the relief sought and to an order vacating and setting aside the order of the Federal Trade Commission.