## HENDERSON, Administrator, OPA, v. BALDWIN et al.

### No. 47.

District Court, W. D. Pennsylvania.

Nov. 10, 1942.

David Ginsberg, of Brooklyn, N. Y., Brunson MacChesney, of Washington, D. C., Talbot Smith, of Dallas, Tex., Earl R. Larson, of Washington, D. C., and Wm. B. Washabaugh, Jr., of Erie, Pa., for plaintiff.

T. P. Dunn, of Erie, Pa., for defendant.

SCHOONMAKER, District Judge.

This is an action under the Emergency Price Control Act of 1942, Sec. 205(a), 50 U.S.C.A.Appendix § 925(a), by Leon Henderson, Administrator, Office of Price Administration, to enjoin defendants from demanding, or receiving, rent in the Erie Defense Rental Area in violation of the price-schedule effective in that area under the provisions of Section 2 of that Act, 50 U.S.C.A.Appendix § 902.

A preliminary injunction was granted, and the case came on for trial on the complaint, answer and proofs.

The facts of the case are briefly these. By Maximum Rent Regulations No. 28 (Fed.Reg. 7, 4913) effective July 1, 1942,

the Administrator fixed as the maximum rent for housing accommodations in the Erie Defense Area, the rents prevailing as of March 1, 1942. The defendant, George Daniel Baldwin, doing business as Baldwin Brothers, owns some five hundred and fifty housing units in the Erie Defense Area. Defendant J. Robert Baldwin also owns various housing units in this area. The defendant, Gladys Riede, owns approximately ten housing units in this area. These two defendants are employees in the Baldwin office in this area, and the rents on their housing units were collected at the Baldwin office.

Notwithstanding the Maximum-Rent Regulation No. 28 for this area, effective July 1, 1942, defendants, in the month of July, 1942, collected rents in excess of the rentals prevailing on March 1, 1942, from approximately one hundred and fifty tenants, refusing all tenders of rent made on the basis of the schedule of March 1, 1942. When tenders of July rent at the price-schedule of March 1, 1942, were made by check, the check was returned with the following notice by defendants:

"Check not acceptable. Kindly send it for the full amount. When the new rent law is finally on the statute books and has been properly interpreted by our courts, we will be glad to take up the matter of adjustment with you, should there be any. Until that time we must insist upon having you live up to the terms of your lease promptly.

"Baldwin Brothers"

In one instance, the tenant tendering a check by letter of July 3, 1942 (Gov.Ex. No. 14), gave defendants distinct notice that these rent regulations were in effect. This letter and defendants' reply are as follows:

"Treasury Department
United States Custom Service
Erie Pa     July 3 1942
"Baldwin Brothers
"1002 State Street
"Erie Pa
"Gentlemen:

"Inasmuch as the Federal Rent Regulations prohibit a tenant from paying an amount of rent in excess of the March 1st 1942 level and by paying an amount in excess of this level constitutes a violation on the part of the tenant and due to the fact that I am in Government employ I cannot violate any Federal Regulations I am again enclosing a check in amount of $50.00 in payment of rent for July 1942 on the house at 1148 West 6th Street, Erie, Pennsylvania.

"I sincerely hope this time the check will be accepted in payment for the month of July.

"Respectfully
"(Signed) E. E. Enderle

"When the laws are properly on the statute books and are available for examination and are interpreted by the courts and our local attorneys, we will live up to the law in every respect, but as yet no one seems to know what they are talking about except the newspapers, and their information is not always correct.

"We therefore, are returning your check, and if you desire to send us one for the full amount, when the thing is finally determined and adjudicated, if there are any adjustments to be made, we will be glad to make them with you, but until such time, you owe us the amount of money as set forth in your lease."

In addition to that, since July 1, 1942, defendants have demanded and received money for services which on and prior to March 1, 1942, had been included in the rent paid on and prior to that date. Since July 1, 1942, defendants have refused to provide these services, which on and prior to March 1, 1942, they had furnished without extra charge. Since July 1, 1942, defendants have filed with the Director of the Erie Defense Area, registration certificate which did not correctly state the rent in effect on March 1, 1942. Since July 1, 1942, they have failed to comply with the Maximum Rent Regulations, in that they did not petition the Administrator to fix the rent for newly-constructed housing accommodations which had no priority rating. Since July 1, 1942, defendants have threatened to remove, and attempted to remove, tenants from possession of housing accommodations in violation of the Maximum Rent Regulations.

Between July 29, 1942, and October 4, 1942, defendants have refunded that portion of rents that had been collected in excess of the rents prevailing on March 1, 1942.

The only defense offered is that defendants had no precise knowledge as to the rent regulations prior to the institution of this suit, and that as soon as they acquired this knowledge, they have complied with these regulations, and have re-

funded all rentals collected by them in excess of the rate of March 1, 1942. This certainly is not a good defense. It was their duty to know what the rent regulations were, and to comply with them.

The designation of Erie County, Pennsylvania, as a defense-rental area was filed with the Division of the Federal Register on April 28, 1942, and was published in the Federal Register on April 28, 1942 (7 Fed.Reg. 3195). Maximum Rent Regulation 28 covering the Erie County Defense Area was issued and filed June 30, 1942, and was published in the Federal Register on July 1, 1942 (7 Fed.Reg. 4913). Section 307 of the Federal Register Act, 44 U.S.C.A. 301–314, provides that filing of a document with the Division of the Federal Register gives constructive notice of the contents of the document to all persons affected thereby.

In addition, to that, we find that the principal defendant, George Daniel Baldwin, knew before July 1, 1942,—at least as early as June 25, 1942,—that the rent-levels of March 1, 1942, were to apply July 1, 1942. At·that time, Ruth Mallick, who was a tenant of premises No. 704 Peach Street at a rental of $35 per month, and who was leaving Erie to go into the armed forces of the United States, offered to furnish a new tenant for said premises at a monthly rental of $32 (the March 1, 1942, rent). Baldwin refused this offer, stating: "We are not going back to the March rent level because we have to make a living." R. 379, Ex. 107.

Baldwin made no effort to contact the Rent Director of the Erie District before this suit was brought. Washabaugh, attorney for the Erie Rent Director, tried to contact Baldwin by telephoning his office before this suit was brought, but was unsuccessful in reaching him.

The whole conduct of defendants indicates a determination not to comply with the rent-regulations for the Erie Area, unless forced so to do. Even since the preliminary injunction was granted, defendants have not fully complied with the rent-regulations, and in a number of instances have demanded and received rents in excess of the level of March 1, 1942.

In our opinion, the facts of the case warrant a final injunction.

In this connection, it should be noted that the injunction applied for is authorized by statute. The Emergency Price Control Act of 1942, Sec. 205(a), provides as follows: "Sec. 205(a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act *·*  *, he may make an application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

All that the plaintiff was required to do was to show a violation of this statute, in order to secure an injunction. Equitable defenses are of no avail to a defendant in case of a statutory injunction. See United States v. San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; Securities and Exchange Commission v. Jones, 2 Cir., 85 F.2d 17; Securities and Exchange Commission v. Torr, 2 Cir., 87 F.2d 446; American Fruit Growers v. United States, 9 Cir., 105 F.2d 722, 725; United States v. Adler's Creamery, Inc., 2 Cir., 110 F.2d 482.

The discontinuance of the practices complained of would not prevent the issuance of an injunction in the instant case. See Bunte Brothers v. Federal Trade Commission, 7 Cir., 104 F.2d 996; Federal Trade Commission v. Goodyear Company, 304 U.S. 257, 260, 58 S.Ct. 863, 82 L.Ed. 1326; United States v. Bates Valve Bag Corporation, D.C., 39 F.2d 162.

Nor is the good faith of the defendants an issue in this case. See Standard Sanitary Manufacturing Co. v. United States, 226 U.S. 20, 33 S.Ct. 9, 57 L.Ed. 107.

Our findings of fact and conclusions of law are filed herewith. Let a decree be submitted accordingly.